IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CARLTON FRANCIS HARRIS, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. DKC-11-3197 |
| PAMELA DOTTELIS, et al. | * | |
| Defendants | * | |
| | *** | |

# MEMORANDUM OPINION

Plaintiff Carlton Francis Harris ("Harris") filed the above-captioned Complaint pursuant to 42 U.S.C. §1983. Defendants Pamela Dottellis, Charles County Detention Center, Horrell, Blankers, Summers, and Fields by their attorneys move to dismiss or, in the alternative, for summary judgment (ECF Nos. 17 & 19). Plaintiff has not filed a response.[1] After review of the pleadings, exhibits, and applicable law, the court determines that a hearing is unwarranted. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, both motions, construed as Motions for Summary Judgment will be GRANTED and judgment will be ENTERED in favor of Defendants.

## Background

Harris, a former pre-trial detainee at the Charles County Detention Center, filed the instant Complaint alleging that he was "handcuffed to a cold steel sitting bench" for two five-day

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), Plaintiff was notified that Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. ECF Nos. 18 & 20. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive paper or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court. *Id.* Plaintiff sought and was granted an extension of time, to and including June 29, 2012, to respond to the dispositive motion. ECF Nos. 21 & 22. To date, he has failed to do so.

periods due to his "non-violently refus[ing] to be housed to sleep three=3 men in a two=2 person cell." ECF No. 1. Harris alleges that he sustained physical and emotional injuries a result of the restraint. He seeks compensatory and punitive damages.

The uncontroverted record indicates that on July 31, 2010, Harris was committed to the custody of the Warden of the Charles County Detention Center as pre-trial detainee. ECF No. 19, Ex. 4. Harris's initial classification revealed he was suicidal and suffering from a mental disability. *Id*., Ex. 13. Harris told the intake medic he often had thoughts of harming himself. Consequently, Harris was placed in the Medical Unit under every 15 minute observation. On August 5, 2010, he progressed to 30 minute observation. He remained in the medical unit from July 31 to August 12. *Id*., Exs. 6, 7, 10 & 13.

From August 12 to August 17, 2010, Harris was housed in a single cell to permit him time to transition to the Detention Center's housing requirement of two men to a cell. On August 18, 2010, he was cleared by medical and correctional staff to move to the regular housing section. When Harris first arrived on the unit there were no other inmates assigned to his cell; however, later that evening another inmate was placed in Harris's cell. *Id*., Exs. 7 & 8. A few hours later Harris advised Officer Neuberger he could not stay in the cell with another inmate. Neuberger attempted to reassure Harris but Harris insisted he needed "to go somewhere else or on the bench."[2] *Id*., Ex. 8. Shortly thereafter Harris was placed on the BAU bench for not

---

[2] The Detention Center's Intake Unit has a bench which is utilized to secure inmates while they are in the Intake Unit. *Id*., Ex. 1. The bench is described as approximately fifteen feet long with a depth of one foot. A metal rail runs under the seating the length of the bench approximately six inches above the ground. There are also metal rings along the bench at regular intervals.

The Detention Center also has a Behavioral Adjustment Unit (BAU), separate from other housing units, comprised of five cells, each containing two beds, a toilet and a sink. The unit is used for, among other things, housing inmates not adjusting to the rules and regulations of the Detention Center. Inmates assigned to the BAU remain in their cells twenty-three hours a day. Meals are served in the cells. *Id*., ex. 1. There is a metal bench located immediately outside the BAU which is used to secure inmates arriving and leaving the BAU and also used when an inmate's cell has to be cleaned due to an inmate's inappropriate actions. The BAU Bench is the same dimensions and construction as the Intake Unit bench. *Id*., Ex. 1.

complying with his assigned housing. Harris was charged with failing to obey a written/verbal order from staff. *Id*.

On August 19, 2010, Officers Summers and Fields, together with Corporal Wood, moved Harris from the bench to a cell but upon arriving at the cell Harris refused to enter. Harris was escorted back to the bench in the BAU and secured. *Id*., Ex. 11.  While securing Harris he indicated to the officers that he should be in "the rubber room."  Based on this statement Summers ordered Harris changed into a suicide wrap to prevent him from harming himself and posted a 15 minute observation sheet.  Medical staff was consulted and agreed Harris should remain on the bench with the suicide wrap and under observation.  Medical advised that Harris could not be moved into the observation cell because it was already occupied and that they would see Harris the following morning.  *Id*.  Harris was charged administratively with failure to obey an order from staff.  *Id*.

On December 16, 2010, Harris again protested when a third inmate moved into his cell. *Id*., Ex. 12.  On December 23, 2010, the same issue arose.  As Officer Clemons moved another inmate into Harris's cell, Harris packed his things and stated he would not share his cell with two other inmates.  Harris was instructed to stay in his cell but continued packing his things.  Harris was removed from the section, handcuffed, and escorted to the BAU bench. *Id*., Ex. 12.  Harris was charged with disobeying an order.

When an inmate is secured to either the Intake Bench of BAU Bench, one end of a pair of standard handcuffs is secured to one of the inmate's wrists and the other end of the handcuff is secured to one of the metal rings on the bench.  The other hand remains unsecured.  Only one inmate is secured to the bench at a time.  Inmates so secured are able to stand up, stretch and move around.  If an inmate is secured to the bench during meal time the meal is served on the

bench and the inmate uses his unsecured hand to eat. The handcuff is removed from the ring on the bench and the inmate is escorted when he needs to use the restroom. *Id*., Ex. 1. If an inmate refuses to go into a cell at lights out the inmate is escorted to the Intake Bench. A mattress is placed on the bench and the inmate is instructed to lie down. The handcuff is then attached on one end to the inmate's wrist and on the other end to the bottom rail of the bench. The inmate is provided a blanket and will remain on the bench until morning unless he asks to use the restroom. *Id*., Ex. 1.

The Detention Center has a grievance procedure which is set forth in the Inmate Guidebook issued to all inmates upon admission to the Detention Center. *Id*., Ex. 1 & 2. The Detention Center grievance policies permit detainees to file a grievance concerning "any issue dealing with a departmental or institutional rule, regulation, policy or procedure." *Id*. Complaints regarding staff action are "to be forwarded in writing to the commander of custody and security." *Id*. This entails a two-step process beginning with a verbal complaint to the sector supervisor and if this is unsuccessful a written grievance form directed to the shift commander or other member of the treatment staff. Grievances are generally to be reviewed within fifteen days. Appeals from adverse decisions are to be submitted in writing to the director within three business days. Appeals are to be answered within five business days. *Id*.

On August 9, 2010, Harris signed a receipt acknowledging he reviewed the Inmate Guidebook. *Id*., Ex. 3. At no time during his incarceration at the Charles County Detention Center did Harris lodge a verbal or written grievance concerning his confinement to the BAU bench or any other restraint/force related matter. In fact, he filed no grievances concerning any staff or other matter during his detention in Charles County. *Id*., Ex. 1.

**Standard of Review**

A.     Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 1969. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.     Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

The court must first consider Defendants' claim that Harris's complaint must be dismissed in its entirety due to his failure to exhaust administrative remedies. The PLRA provides, in pertinent part:

(a) Applicability of administrative remedies

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

Plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that a Plaintiff is aggrieved by a single occurrence, as opposed to a general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional

conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Id.* 478 F.3d at 1225; *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir.2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Thus, Plaintiff's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D.Md.2003). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md.1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages

of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir.2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Defendants, who have raised non-exhaustion as an affirmative defense, provide an exhibit demonstrating that Harris received and reviewed the Inmate Guidebook setting forth the grievance procedure. Defendants further indicate that Harris filed no grievances while incarcerated in the detention center. Harris has not responded. Rather, Harris stated in his original complaint that he believed, as a pretrial detainee, he was not subject to any exhaustion requirement. This was error. He also baldly states that unnamed administrative staff "claim the issue was ungrievable."[3] There is no claim, however, that Harris was prevented from availing himself of the administrative remedy process due to the misstatement of an unidentified staff member concerning availability of the remedy process. Harris's bald allegations regarding his beliefs about access to the administrative process are belied by his acknowledgement of receipt and review of the Inmate Guidebook which clearly sets forth the grievance process as well as indicates that the grievance process at the Detention Center was applicable to Harris's claims. Harris has failed to demonstrate that through no fault of his own, he was prevented from availing

---

[3] Harris has failed to provide any facts in support of this claim. Harris provides no information as to who uttered this statement or when it was made. If the statement was made by an employee of the Detention Center it was error and in clear conflict with the Inmate Guidebook provided to Harris. If the statement was made by an employee of the Division of the Correction where Harris was subsequently transferred, the statement was correct in that Harris could not utilize the DOC's grievance process for events occurring at the Detention Center. *See* ECF No. 1. In either event Harris does not allege that he tried to institute a grievance but was affirmatively prevented from doing so.

himself of the administrative process.  As Harris has utterly failed to exhaust such administrative remedies as were available to him, his case shall be dismissed.

A separate Order follows.


Date:   September 20, 2012                       /s/
                                        DEBORAH K. CHASANOW
                                        United States District Judge